UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**GARRY ELSWORTH CARDWELL
CAROLYN JENNETTE CARDWELL**,

Debtors.

Case No. **13-60311-13**

## MEMORANDUM OF DECISION

At Butte in said District this 7th day of November, 2013.

Pending in this Chapter 13 case are: (1) Debtors' Objection (Docket No. 23) to Proof of Claim No. 4 filed by JPMorgan Chase Bank, National Association ("JPMorgan Chase Bank") based on 11 U.S.C. § 506(b) on the grounds it is undersecured; and (2) confirmation of Debtors' Chapter 13 Plan (Dkt. 8) and objections thereto filed by the Chapter 13 Trustee and JPMorgan Chase Bank. A hearing on these contested matters was scheduled for September 6, 2013, at Great Falls. Debtors were represented at the hearing by attorney D. Randy Winner ("Winner") of Great Falls. JPMorgan Chase Bank was represented by attorney Erica R. Peterman ("Peterman") of Missoula. Counsel agreed to submit the matters on stipulated facts, so the Court vacated the hearing and granted the parties time to file stipulated facts and briefs. The parties' briefs have been filed, but the parties did not file a separate statement of stipulated facts. After review of the briefs and the record, the Court deems these matters are ready for decision. For the reasons set

1

forth below Debtors' Objection to JPMorgan Chase Bank's Proof of Claim will be sustained in part and overruled in part; confirmation of Debtors' Plan is denied, and Debtors will be granted leave to file an amended Plan curing JPMorgan Chase Bank's default as required under 11 U.S.C. § 1322(c).

This Court has jurisdiction of this Chapter 13 bankruptcy under 28 U.S.C. § 1334(a). Debtors' Objection to JPMorgan Chase Bank's claim and confirmation of Debtors' Plan are core proceedings under 28 U.S.C. § 157(b)(2). This Memorandum includes the Court's findings of fact and conclusions of law.

## FACTS & PROCEDURAL HISTORY

The parties agree that no disputes of material fact exist. A promissory note attached to JPMorgan Chase Bank's Proof of Claim 4 shows that Debtors Garry E. Cardwell and Carolyn Cardwell signed a note dated September 22, 2009, in the amount of $122,812.00 payable to lender First Interstate Bank  The note calls for monthly payments in the amount of $678.17 for 30 years, with interest on the unpaid principal charged until the full amount of the principal has been paid at the annual rate of 5.25 percent (5.25%). Paragraph 6 of the note provides for a late charge calculated at 4% of the payment amount when made 15 days after the payment due date, and an addition provides for payment of costs and customary attorneys' fees. An indorsement on the last page of the note makes the note payable to the order of JPMorgan Chase Bank.

Darryl also signed a "Deed of Trust" ("DOT") dated September 22, 2009, which provides as security for repayment of the note the Debtors' residence at 811 ½ 13th St. Sw, Great Falls, Montana 59404.[1]  The DOT was recorded on September 28, 2009. The DOT provides at

---

[1] A metes and bounds description of the residence is on page 2 of the DOT.

paragraphs 10 and 18, in the event of default, reinstatement or foreclosure proceedings, the lender may charge the costs, expenses and fees including customary attorneys' fees.

Debtors defaulted on the note. Debtors filed their voluntary Chapter 13 petition on March 13, 2013, with their Schedules, Statement of Financial Affairs and Chapter 13 Plan. Debtors' residence[2] is listed on Schedule A with a current value of $120,000,[3] encumbered by a secured claim stated in the amount of $137,000.00. Debtors claim a homestead on their residence. Schedule D lists JPMorgan Chase Mortgage as having a claim in the amount of $137,000.00 secured by Debtors' residence.

The hearing on confirmation of Debtors' Chapter 13 Plan was scheduled originally to be held on May 10, 2013, but was continued several times until September 6, 2013. Debtors' Plan provides for 60 months of payments in the amount of $460 per month. Paragraph 2(b) of the Plan lists no impaired secured claims. Paragraph 2(c) treats the claim of JPMorgan Chase as an unimpaired secured claim, secured by their residence, which is not provided for by the Plan and receives no payments through the Trustee except with regard to the arrearage. Paragraph 2(c) lists a single arrearage on JPMorgan Chase "unimpaired secured claim[]" in the amount of "$22,000.00 (estimated)." Just above that arrearage the Plan states that "the following arrearages on unimpaired secured claims, if any, shall be paid through the Trustee on a pro rata basis until the same have been paid in full." The Trustee and JPMorgan Chase Bank both filed objections to confirmation based in part on the treatment of JPMorgan Chase Bank's arrearage.

---

[2]Schedule A lists the residence at 815 13th Street SW in Great Falls, and explains that the property previously had the address listed on the DOT.

[3]The parties agree that the scheduled value of the residence is the fair market value.

JPMorgan Chase Bank filed objections to confirmation on April 24, 2013, on the grounds the Plan fails to satisfy the requirement of 11 U.S.C. § 1325(a)(5)(B)(ii) that the Plan provide for full payment of its allowed claim. More specifically, JPMorgan Chase Bank objected that the amount of its arrearage is $24,997.06 in its Proof of Claim.[4] It also objected that the Plan does not provide adequate protection of its interest and fails the feasibility test of 11 U.S.C. § 1325(a)(6).

JPMorgan Chase Bank filed Proof of Claim No. 4 on May 14, 2013, asserting a secured claim in the amount of $136,988.72 secured by the DOT. Section 4 of Proof of Claim 12 states that the claim is fully secured by 811 ½ 13th St. SW, Great Falls, Montana 59404, but left blank the value of the property. The amount of arrearage is stated in the amount of $24,997.06.

The attachment to Proof of Claim 12 itemizes the $24,997.06 arrearage as comprised of 24 installments of $678.17 due from April 1, 2011, to March 1, 2013 ($16,276.08), plus $8,720.98 in additional prepetition fees, expenses and other charges. The $8,720.98 in additional expenses is comprised of $98.27 in late charges incurred 3/1/2013, $487.50 in attorney's fees incurred 12/21/2012, $1,268.00 in title costs, $142.00 in recording fees, $252.00 in property inspection fees from 5/7/11 through 3/2/13, $5,660.76 described as "Escrow shortage or deficiency" dated 3/13/2013, and $425.00 in post-petition attorney fees "for filing the proof of claim, reviewing the plan and filing request for special notice."

On May 21, 2013, Debtors filed their Objection to Proof of Claim 4. Debtors object that JPMorgan Chase Bank's Claim 4 is undersecured under § 506(b) based on the scheduled value of

---

[4]JPMorgan Chase Bank did not file its proof of claim until May 14, 2013, several weeks after it filed its objection.

their residence, $120,000. Debtors do not argue that the assessed charges, fees and costs on the attachment to Claim 4 are unreasonable, but rather they argue that JPMorgan Chase Bank's arrearage should be allowed only for the escrow shortage in the amount of $5,660.76, and the balance of JPMorgan Chase Bank's asserted $24,997.06 arrearage should be disallowed as a secured claim and allowed as an unsecured claim pursuant to § 506(b). Debtors further argue that Montana's prohibition against collection of a deficiency in a foreclosure of a trust indenture in MONT. CODE ANN. ("MCA") § 71-1-317 limits JPMorgan Chase Bank's arrearage claim to accrued principal and interest despite the anti-modification provisions of 11 U.S.C. § 1322(b)(2).

JPMorgan Chase Bank argues that it is entitled to fees, interest, costs and charges under the note and/or trust indenture and nonbankruptcy law, and frames the issue as whether it is entitled to fees and costs under § 1322(e) as part of an arrearage cure even though it is undersecured. JPMorgan Chase Bank contends that the plain meaning of the unambiguous text of § 1322(e) supersedes § 506(b) in determining the amount necessary to cure a default or arrearage in a chapter 13 plan.

## DISCUSSION

### I. Objection to Claim 4.

"The amount of a creditor's 'claim' is typically determined as of the petition date, and includes the principal amount of the obligation plus all matured prepetition interest, fees, costs, and charges owing as of the petition date. The allowability of these prepetition amounts as part of the secured creditor's 'claim' is not determined by section 506, but is governed by section 502 in conjunction with other provisions of the Code." 4 COLLIER ON BANKRUPTCY, ¶ 506.04[1] (15th ed. rev.). "Section 506(b) prescribes that postpetition interest, fees, costs or charges may be

added as part of the allowed amount of an allowed secured claim to the extend that the claim is oversecured." *Id*.

A proof of claim that is executed and filed in accordance with the Rules "shall constitute prima facie evidence of the validity and amount of the claim." Rule 3001(f); *see also Garner v. Shier (In re Garner)*, 246 B.R. 617, 620 (9th Cir. BAP 2000) ("There is an evidentiary presumption that a correctly prepared proof of claim is valid as to liability and amount."). A claim "is deemed allowed, unless a party in interest . . . objects." § 502(a); *Travelers Cas. & Sur. Co. of Am. v. Pac. Gas & Electric Co.,* 549 U.S. 443, 449, 127 S.Ct. 1199, 167 L.Ed.2d 178 (2007).

Upon objection, a bankruptcy court "shall determine the amount of such claim . . . as of the date of the filing of the petition, and shall allow such claim in such amount, except to the extent that— (1) such claim is unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." § 502(b)(1). The United States Supreme Court explained:

> Section 502(b)(1) disallows any claim that is "unenforceable against the debtor and property of the debtor, under any agreement or applicable law for a reason other than because such claim is contingent or unmatured." This provision is most naturally understood to provide that, with limited exceptions, any defense to a claim that is available outside of the bankruptcy context is also available in bankruptcy. *See* 4 Collier ¶ 502.03[2] [b], at 502–22 (explaining that § 502(b)(1) is generally understood to "make available to the trustee any defense" available to the debtor "under applicable nonbankruptcy law"— i.e., any defense that the debtor "could have interposed, absent bankruptcy, in a suit on the [same substantive] claim by the creditor").
>
> This reading of § 502(b)(1) is consistent not only with the plain statutory text, but also with the settled principle that "[c]reditors' entitlements in bankruptcy arise in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying or contrary provisions of the Bankruptcy

> Code." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000). That principle requires bankruptcy courts to consult state law in determining the validity of most claims. See *ibid.*
>
> Indeed, we have long recognized that the " 'basic federal rule' in bankruptcy is that state law governs the substance of claims, Congress having 'generally left the determination of property rights in the assets of a bankrupt's estate to state law.' " *Ibid.* (quoting *Butner v. United States*, 440 U.S. 48, 57, 54, 99 S.Ct. 914, 59 L.Ed.2d 136 (1979); citation omitted). Accordingly, when the Bankruptcy Code uses the word "claim"—which the Code itself defines as a "right to payment," 11 U.S.C. § 101(5)(A)—it is usually referring to a right to payment recognized under state law. As we stated in *Butner*, "[p]roperty interests are created and defined by state law," and "[u]nless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding." 440 U.S., at 55, 99 S.Ct. 914; accord, *Vanston Bondholders Protective Comm. v. Green*, 329 U.S. 156, 161, 67 S.Ct. 237, 91 L.Ed. 162 (1946) ("What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law").

*Travelers,* 549 U.S. at 450-51, 127 S.Ct. at 1204-05; *In re Fitness Holdings Int'l., Inc.*, 714 F.3d 1141, 1146 (9th Cir. 2013).

Debtors object to the amount of JPMorgan Chase Bank's secured claim, and also to the fees, late charges, interest and other charges which JPMorgan Chase Bank includes in its stated $24,997.06 arrearage because it is undersecured. JPMorgan Chase does not dispute that it is undersecured, but contends that it is entitled to the fees, costs and charges included in its arrearage under the note, DOT, and state law.

This Court discussed its longstanding rule governing allowance of claims *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th

Cir. 2000):

> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.
>
> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.
>
> * * * *
>
> "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

*See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Found. of Am.*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R.

8

at 226).

The analysis under *Lundell v. Anchor Const. Specialists* was reiterated by the Ninth Circuit *In re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002). Then in 2006 the BAP, in *Litton Loan Servicing, LP v. Garvida (In re Garvida)*, 347 B.R. 697, 706-07 (9th Cir. BAP 2006), discussed clarification provided by the United States Supreme Court decision, *Raleigh v. Ill. Dep't of Revenue*, 530 U.S. 15, 120 S.Ct. 1951, 147 L.Ed.2d 13 (2000), regarding the "prima facie evidence" language in Rule 3001(f):

> The Supreme Court has clarified that the Rule 3001(f) "prima facie evidence" language does not address the burden of proof in an objection to claim proceeding. *Raleigh*, 530 U.S. at 22 n. 2, 120 S.Ct. 1951.
>
> It follows that, after *Raleigh*, Rule 3001(f) cannot be construed as allocating the burden of proof and, instead, operates merely as an evidentiary presumption that is rebuttable.
>
> The evidentiary presumption of a prima facie case operates to shift the burden of going forward but not the burden of proof. [*Garner v. Shier (In re Garner),* 246 B.R. 617, 622 (9th Cir. BAP 2000)]; *Diamant v. Kasparian (In re So. Cal. Plastics, Inc.)*, 165 F.3d 1243, 1248 (9th Cir. 1999) (although the creditor bears the ultimate burden of persuasion, the debtor must come forward with evidence to rebut the presumption of validity); 9 [COLLIER ON BANKRUPTCY ¶ 3007.01[1] (Alan N. Resnick & Henry J. Sommer eds. 15th ed. rev. 2006)] ("once this burden of going forward to overcome the presumption is met, the ultimate burden is on the claimant"). Hence, at best, Litton's $33,435.46 proof of claim was entitled to the Rule 3001(f) evidentiary presumption, which is capable of being rebutted.
>
> Assuming, without deciding, that the evidentiary presumption did apply, the mechanics of what it takes to rebut the Rule 3001(f) presumption are driven by the nature of the presumption as "prima facie" evidence of the claims validity and amount. *Garner*, 245 B.R. at 621-22. The proof of claim is more than "some" evidence; it is, unless rebutted, "prima facie" evidence. *Id.* One rebuts evidence with counter-evidence. *Id.*

347 B.R. at 706-07.

In *Garvida* the objecting debtors satisfied their burden of going forward by proferring

evidence at a hearing proving they made payments, and as a result the burden shifted to the creditor to prove the validity and amount of its claim, which it failed to prove when it failed to provide an accounting. 347 B.R. at 702, 707. Here, JPMorgan Chase Bank's Proof of Claim 4 includes copies of the note, DOT, and attachments itemizing the fees and costs included in the stated arrearage. Debtors offered no evidence at the hearing to rebut JPMorgan Chase Bank's Claim 4, and as a result JPMorgan Chase Bank is entitled to the rebuttable presumption of the validity and amount of its claim, except with respect to the value of its collateral which it failed to state. The parties do not dispute that the value of Debtors' residence which is the bank's security is $120,000. Thus, Debtors' Objection will be sustained in part, and JPMorgan Chase Bank's secured claim will be allowed in the amount of $120,000, with the remainder of the $136,988.72 claim allowed as an unsecured nonpriority claim.[5]

However, as to the amount of JPMorgan Chase Bank's arrearage, the Court finds and concludes that the Debtors have not satisfied their burden to come forward with evidence to rebut the presumption of validity of the amount of claimed arrearage claim. *Garvida*, 347 B.R. at 706-07. The note and deed of trust attached to Claim 4 include provisions for interest, late charges, prepetition and postpetition attorney fees, recording fees, property inspection fees, and other charges. Those charges are itemized on the attachments to Claim 4, by category, with the dates incurred and amounts. Debtors offered no evidence at the hearing to rebut the presumption, and they failed to prepare and file a stipulation which states facts which might rebut the presumption.

With respect to the prepetition attorney's fees in the amount of $487.50, the attachment

---

[5]The operative subsection to limit the amount of the bank's secured claim to the value of its interest in the estate's interest in Debtors' residence is not § 506(b), as Debtors argue, but rather § 506(a)(1).

states that the attorney's fees were incurred on 12/21/12, prior to the date Debtors filed their Chapter 13 petition. No explanation is provided identifying the attorney who performed services, or what tasks the attorney or attorneys performed. No time increments and no billing rates are stated. The postpetition attorney's fees of $425.00 were incurred 5/13 for "filing the proof of claim, reviewing the plan and filing request for special notice." The case docket and Claim 4 show that Erika Peterman is the attorney who provided the legal services.

*Travelers* directed courts to look to state law when determining claims, including the award of attorneys fees. 549 U.S. at 448, quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975). Since the *Travelers* decision, the allowance of claims for attorney's fees in bankruptcy generally is recognized as governed by state law. *Travelers*, 549 U.S. at 450–51.

The Ninth Circuit construed *Travelers* in *In re SNTL Corp.*, 380 B.R. 204, 217 (9th Cir. BAP 2007), *aff'd*, 571 F.3d 826 (9th Cir. 2009) (adopting the BAP opinion as its own). The Ninth Circuit held that § 506(b) is irrelevant to determining the allowability of an unsecured claim, and a court must look to section 502 to determine allowability and § 502(b) does not disallow attorney fees. *STNL*, 571 F.3d at 843.

Debtors argue that Montana's anti-deficiency statute MCA § 71-1-317 prohibits JPMorgan Chase Bank from claiming attorney fees or anything except principal and interest despite § 1322(b)(2). The opening clause of MCA §71-1-317 limits it application to "[w]hen a trust indenture executed with this part is foreclosed by advertisement and sale . . . ." The facts in the instant case do not show foreclosure by advertisement and sale. Debtors seek to retain their residence and cure the default pursuant to the Bankruptcy Code. Because of the opening clause,

MCA § 71-1-317 does not apply.

With respect to the $425.00 in claimed postpetition attorney fees, and $487.50 in prepetition attorney's fees, this Court typically requires creditors who seek postpetition fees and costs to file a fee application so that the Court can review and consider the reasonableness of the fees and costs pursuant to F.R.B.P. 2016(a) and Mont. LBR 2016-1 when the creditor wishes to be paid from the estate. *See, e.g., In re Ransom*, 361 B.R. 895, 898 (Bankr. D. Mont. 2007) (predating 2009 Local Rule change); *In re Michnal*, 19 Mont. B.R. 410, 415 (Bankr. D. Mont. 2001). The $487.50 in prepetition attorney's fees included in JPMorgan Chase Bank Proof of Claim 4 were incurred prepetition, not postpetition.

Local Rule 2016-1(f) provides that prepetition fees shall be itemized in the proof of Claim. This Court noted in *Ransom* that either a fee application, or a proof of claim specifically claiming a fee, may be sufficient for due process in the Ninth Circuit. 361 B.R. at 899; *Atwood v. Chase Manhattan Mortgage Co. (In re Atwood)*, 293 B.R. 227, 231-32 (9th Cir BAP 2003); *In re Powe*, 281 B.R. 336 (Bankr. S.D. Ala. 2001). In *Ransom* this Court disallowed $10,574.00 in attorney fees included in the proof of claim because there was no itemization upon which the Court could determine reasonableness of the fees. 361 B.R. at 900, 903.

In the instant case, no itemization has been provided of the $487.50 of prepetition attorney's fees listed on the attachment. The Court cannot determine what tasks were performed, or by whom, or the billing rate. On the other hand, the attachment provides the date of 12/21/12 as when the attorney's fees were incurred prepetition, and 5/13 as the date attorney's fees were incurred by Peterman postpetition . The DOT entitles JPMorgan Chase Bank to attorney fees, and the Debtors have not objected to the $487.50 in prepetition attorney's fees or the $425.00 in

postpetition fees on the ground that they are not reasonable. Based on the DOT provisions, JPMorgan Chase Bank's Proof of Claim 4 and attachment, this Court finds that JPMorgan Chase Bank has complied with the requirements of LBR 2016-1(f) and that the $487.50 in prepetition fees and $425.00 in postpetition attorney's fees are reasonable.

## II. Confirmation and § 1322(e).

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met. *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo*, 784 F.2d 1440, 1443-44 (9th Cir.1986) (citing *In re Elkind*, 11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added); *Accord 550 West Ina Rd. Trust v. Tucker*, 989 F.2d 328, 330 (9th Cir.1993); *Downey Sav. and Loan Ass'n v. Metz*, 820 F.2d 1495, 1496 (9th Cir.1987). *See also In re Pearson*, 10 B.R. 189, 194 (Bankr.E.D.N.Y.1981). Debtors have the burden of proving that it has satisfied each element of § 1325, including § 1325(a)(1) which requires that "the plan complies with the provision of this chapter and with the other applicable provisions of this title[.]" Among the provisions required to be proven is the cure of default provision at § 1322(e).

Sections 1322(b)(3) and 1322(c) authorize a chapter 13 plan to provide for the curing of any default, with the law governing the determination of the cure amount specified by § 1322(e):

> Notwithstanding subsection (b)(2) of this section and sections 506(b) and 1325(a)(5) of this title, if it is proposed in a plan to cure a default, the amount necessary to cure the default shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

*Ransom*, 361 B.R. at 899.

This Court observed in *Ransom*: "Although § 1322(e) appears to trump § 506(b), both sections potentially pertain when a secured creditor files a proof of claim, because it will not always be apparent that the debtor's chapter 13 plan will cure the default . . . ." *Id.*

A leading commentator explains:

Section 1322(e) provides that the amount necessary to cure a default is to be determined in accordance with the underlying agreement and applicable nonbankruptcy law.

* * * *

Under section 1322(e), the amount necessary to cure a default is the same amount as would be required to cure if the debtor were not in bankruptcy. Two conditions must be met before interest or other charges can be required as part of a bankruptcy cure. First, the interest or charges must be required under the original agreement, and second, they cannot be prohibited by state law. In other words, the bankruptcy court will never require interest in excess of that permitted by state law, and will require none unless the agreement provides for interest.

[*Rake v. Wade*, 508 U.S. 464, 113 S.Ct. 2187, 124 L.Ed.2d 424 (1993)] had relied on Code section 506(b) to require preconfirmation interest from an oversecured creditor and section 1325(a)(5) to require postconfirmation interest. By its introductory language specifically mentioning those sections as well as section 1322(b)(2), section 1322(e) makes clear that these sections have no applicability in a cure situation, in which the debtor is merely keeping the original contract in place and bringing it up to date. Thus, in [*Deutsche Bank Nat'l Trust Co. V. Tucker*, 621 F.3d 460 (6th Cir. 2010)], the Court of Appeals for the Sixth Circuit held that section 506(b) cannot be used to limit a claim for arrearages in a cure situation.

8 Lawrence P. King *et al.*, COLLIER ON BANKRUPTCY ¶ 1322.19 (16th ed. 2012).

Debtors' sole stated ground in objecting to the JPMorgan Chase Bank's claim for attorney's fees, late charges, title costs, recording fees, and property inspection fees, is § 506(b). Proof of Claim 4 does not include any amount for postpetition interest. The $12,653.61 in interest is claimed as of the petition date as part of the arrearage. $487.50 in claimed attorney's

fees were incurred prepetition. The parties agree that JPMorgan Chase Bank is undersecured, and its secured claim is treated in Debtors' Plan as unimpaired.

Debtors argue that since JPMorgan Chase Bank is undersecured the attorney's fees, charges and interest cannot be included in its arrearage because of § 506(b). JPMorgan Chase Bank argues that the language of § 1322(e) is unambiguous and its plain meaning controls over § 506(b). The Ninth Circuit explains:

> The first and most important step in construing a statute is the statutory language itself. *Chevron, U.S.A., Inc. v. Natural Res. Def. Council*, 467 U.S. 837, 842-44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). We look to the text of the statute to "determine whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). Our inquiry ceases if from the plain meaning of the statute congressional intent is unambiguous, and the statutory scheme is coherent and consistent. *Id.*

*Eskanos & Adler, P.C. v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002).

The opening clause of § 1322(e) includes: "Notwithstanding . . . sections 506(b) . . ., if it is proposed in a plan to cure a default, the amount necessary to cure the default, shall be determined in accordance with the underlying agreement and applicable nonbankruptcy law." § 1322(e). In this Court's view the text of § 1322(e) is plain and unambiguous in disregarding § 506(b) in determining the amount of JPMorgan Chase Bank's arrearage to be cured in Debtors' Plan, and the Court's inquiry ceases. *See Ransom*, 361 B.R. at 899.

Proof of Claim No. 4 states JPMorgan Chase Bank's arrrearage in the amount of $24,997.06. Debtors' Plan proposes to pay an arrearage to JPMorgan Chase in the estimated amount of $22,000. JPMorgan Chase Bank itemized the $425.00 in postpetition attorney's fees, interest and other charges included in the arrearage on the attachment to Proof of Claim 4.

JPMorgan Chase Bank is entitled to a rebuttable presumption of the validity and amount of the arrearage, and Debtors offered no evidence to rebut the amounts. The fees, charges, and costs are provided under the terms of the note and DOT attached to Claim 4, and no evidence or legal argument has been provided that they are prohibited by state law. *See* COLLIER ¶ 1322.19. The prepetition attorney's fees, postpetition attorney's fees, costs and charges are allowed under state law. *SNTL*, 571 F.3d at 842-43; *Travelers*, 549 U.S. at 450-51.

Because Debtors' Plan does not cure the arrearage stated on JPMorgan Chase Bank's Claim 4, the Court finds and concludes that Debtors failed to satisfy their burden under § 1325(a)(1) that the plan complies with the default cure requirement of § 1322(e). Therefore confirmation of Debtors' Plan will be denied. Debtors will be allowed an opportunity to file an amended Plan to cure the amount of JPMorgan Chase Bank's arrearage in the amount of $24,997.06.

**IT IS ORDERED** a separate Order shall be entered sustaining in part and overruling in part the Debtors' Objection to JPMorgan Chase Bank's Proof of Claim No. 4; JPMorgan Chase Bank's Proof of Claim No. 4 will be allowed as a secured claim in the amount of $120,000.00, with the remaining amount of Claim 4 allowed as an unsecured nonpriority claim.

**IT IS FURTHER ORDERED** JPMorgan Chase Bank's objection to confirmation will be sustained and confirmation of Debtors' Chapter 13 Plan will be denied. Debtors will be granted until **November 18, 2013,** to file an amended Plan curing the Debtors' default to JPMorgan Chase Bank in the amount of $24,997.06, or this case may be dismissed without further notice or hearing; and the hearing on confirmation of Debtors' amended Chapter 13 Plan will be held on **Friday, December 6, 2013, at 10:00 a.m.**, or as soon thereafter as counsel can be

16

heard, in the or as soon thereafter as counsel can be heard, in the **CHARLES N PRAY COURTROOM; 125 CENTRAL AVE W; GREAT FALLS, MONTANA.**

BY THE COURT

/s/ Ralph B Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana